IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOAN L. CONATSER,

        Plaintiff,                        No. CIV S-11-0356 EFB

    vs.

MICHAEL J. ASTRUE
Commissioner of Social Security,

        Defendant.               ORDER

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a Period of Disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

I.    BACKGROUND

        Plaintiff Joan Conatser formally applied for a Period of Disability and DIB on February 7, 2007, alleging that she had been disabled since January 1, 2005.[1] Administrative Record

---

[1] In her reply brief, plaintiff argues for the first time that the ALJ erred in finding that her alleged disability onset date was January 1, 2005. Pl.'s Reply to Def.'s Mot. for Summ. J., Dckt.

1

("AR") 49, 77. Plaintiff's application was initially denied on July 3, 2007, and upon reconsideration on November 2, 2007. *Id.* at 51, 56. On June 9, 2009, a hearing was held before administrative law judge ("ALJ") Robert C. Tronvig, Jr. *Id.* at 21. Plaintiff, who was unrepresented, testified at the hearing. *Id.* at 21-48.

On September 3, 2009, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(I) and 223(d) of the Act.[2]  *Id.* at 20. The ALJ made the following specific

---

No. 17 at 1-2. Plaintiff correctly notes that an Abbreviated DIB Review Sheet provides two onset dates, January 1, 2005 and January 12, 2007. AR 77. Plaintiff's application also states that she was unable to work due to her alleged disability beginning January 12, 2007. *Id*. at 72. Plaintiff argues that the ALJ erred by not asking plaintiff to clarify this discrepancy at her administrative hearing. Dckt. No. 17 at 2. The court is not required to address this argument, as plaintiff initially raised it in her reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("[A] district court need not consider arguments raised for the first time in a reply brief."). Notwithstanding plaintiff's failure to properly raise the argument, the undersigned finds that the ALJ's failure to ascertain the exact onset date was harmless because the ALJ concluded that plaintiff was not disabled at any time between January 1, 2005 and September 30, 2009. *Id*. at 20. Since January 12, 2007, the other potential onset date, fell between January 1, 2005 and September 30, 2009, the ALJ did not fail to consider a time period in which plaintiff may have been disabled.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

////

findings:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2009 (Exhibit 3D). She must establish disability prior to or on that date.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2005 through her date last insured of September 30, 2009 (20 CFR 404.1571 *et seq.*). Her earnings record shows that she reported being self-employed from 2006 through 2008. She earned $3,510 in 2006, $3,695 in 2007, and $3,879 in 2008 (See: DEQY). This work did not constitute substantial gainful activity under any of the three tests of substantial gainful activity for self-employed individuals.

...

3. Through the date last insured, the claimant had the following severe impairments: Degenerative disc disease of the cervical and lumbar spine, a sleep disorder, myofascial pain syndrome, consistent with fibromyalgia, and medial and lateral epicondylitis of the left elbow (20 CFR 404. 1520(c)).

...

[4]. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

...

[5]. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). Dr. Mitchell found that the claimant was capable of sitting, standing, and walking for about 6 hours. She could lift and carry 20 pounds occasionally and 10 pounds frequently. She would have frequent postural limitations on bending, stooping, crouching, and climbing because of her low back pain. She might also have frequent manipulative limitations because of the carpal tunnel syndrome in her right wrist (Exhibits 12F/5-6, and 13F).

...

---

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3

> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> ...
>
> [7]. The claimant was born [in] 1955 and was 49 years old (younger individual) on her alleged onset date of disability, January 1, 2005. At the age of 50 years, her age category changed to an individual closely approaching advanced age (20 CFR 404.1563).
>
> [8]. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> [9]. The claimant has acquired skills from past relevant work (20 CFR 404.1568).
>
> ...
>
> [10]. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).
>
> ...
>
> [11]. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2005, the alleged onset date, through September 30, 2009, the date last insured (20 CFR 404.1520(g)).

*Id.* at 12-20.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 4-6. However, on December 30, 2010, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 1.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred in: 1) finding that her hands and shoulder impairments were not severe at step two, 2) rejecting the opinion of plaintiff's treating physician, 3) failing to provide clear and convincing reasons for rejecting plaintiff's testimony, 4) finding that plaintiff had the residual functional capacity to perform light work, and 5) applying the Medical-Vocational Guidelines.

    A.    <u>Any Error in Failing to Find That Plaintiff had Severe Hands and Shoulder Impairments was Harmless</u>

Plaintiff contends that the ALJ erred at the second step of the sequential evaluation process by not finding that plaintiff had severe hands and shoulder impairments. Pl.'s Mot. for Summ. J., Dckt. No. 12-1 at 19. As stated above, the ALJ found at step two that plaintiff's severe impairments included "[d]egenerative disc disease of the cervical and lumbar spine, a sleep disorder, myofascial pain syndrome, consistent with fibromyalgia, and medial and lateral epicondylitis of the left elbow." AR 12.

A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An ALJ must consider all of the evidence at step two to determine whether a medically determinable impairment significantly

limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (citation omitted). Step two is "a de minimis screening device [used] to dispose of groundless claims" and the ALJ's finding must be "clearly established by medical evidence." *Id.* at 687 (citations and quotation marks omitted).

There is evidence in the record that could support a finding that plaintiff had wrist and shoulder impairments. For example, a March 14, 2005 assessment found that plaintiff had osteoarthritis of her right shoulder with frequent crepitus and occasional catching. AR 153. An MRI also revealed some degenerative joint disease of the shoulder. *Id.* On June 30, 2005, Dr. McDaniel, one of plaintiff's treating physicians, found that plaintiff had an impingement of the right shoulder. *Id.* at 231. On February 7, 2007, plaintiff underwent electrodiagnostic testing, which revealed "[m]ild right median sensory carpal tunnel syndrome without motor involvement." *Id.* at 295. An orthopedic evaluation conducted on June 2, 2007, found that plaintiff had a "diminished range of motion of her shoulder, as well as findings of carpal tunnel syndrome in her right wrist." *Id.* at 315.

It is not entirely clear from the ALJ's decision why he did not find that plaintiff's hands and shoulder impairments were severe. In his step two analysis, the ALJ states that plaintiff "has Carpal tunnel in her right hand and starting in the left" and has pain in her right shoulder, but the ALJ did not discuss how these limitations impacted plaintiff's ability to perform basic work activities. *Id.* at 13. However, any failure to list plaintiff's hands and shoulder limitations as severe was, at most, harmless error because the ALJ considered these impairments in the remaining steps of the sequential evaluation process. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that when an ALJ accounts for resulting limitations later in the sequential evaluation process, any error in finding the impairment non-severe at the second step

6

is harmless); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523); *Burch v. Barnhart*, 400 F.3d 676, 682–82 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where it was considered in determining claimant's RFC).

Plaintiff contends, however, that the ALJ did not include these impairments at the third step of the sequential evaluation process. Dckt. No. 12-1 at 19. Plaintiff misreads the ALJ's decision. Although the ALJ did not individually discuss plaintiff's impairments in his step three analysis, it is clear from the decision that the ALJ considered all of plaintiff's impairments, not just the impairments listed as severe at the second step. The ALJ found that plaintiff did not have impairments or combination of impairments that met or medically equaled one of the listed impairments. AR 13. The ALJ further stated that plaintiff "has no impairment" satisfying the severity criteria in any musculoskeletal or neurological listings. A fair reading of the ALJ's third step analysis, rather than supporting plaintiff's contention that the ALJ only considered serve impairments, reveals that the ALJ considered all of plaintiff's impairments.

Furthermore, the ALJ explicitly discussed plaintiff's hands and shoulder impairments at the fourth step. In his fourth step analysis, the ALJ wrote:

> The objective medical evidence shows that in October of 2004, the claimant was successfully treated for an episode of diverticultis (Exhibit 2F/1). On March 14, 2005, her diagnosis was osteoarthritis of the right shoulder. Her recent MRI showed some degenerative joint disease in that shoulder with an intact rotator cuff muscle (Exhibit 3F/1). On June 30, 2005, she underwent a physical and complained only of a recurrent problem with her right shoulder. She wanted an injection as she had the past March. In July of 2005, she reported that her right shoulder condition had worsen. However, upon examination she had full range of motion and mild signs of impingement. Her diagnosis was subacromial impingement syndrome, and bicipital tendinitis. She experienced almost complete pain relief with a major joint injection (as had happened in a [*sic*] March 2005, her initial visit) (Exhibit 4F/2-3).
>
> ...
>
> On February 7, 2007, she had complaints of bilateral hand numbness, weakness, and tingling for the past 6 months. She also complained of a lot of elbow pain. She had a history of arthritis in her right shoulder and some left shoulder blade pain. . . . Her nerve conduction study only showed mild right median sensory carpal tunnel syndrome without

7

> motor involvement. Otherwise, it was a negative exam.
>
> ...
>
> The claimant attended a consultative complete orthopedic evaluation on June 2, 2007 performed by Matthew Mitchell, MD. . . . Upon examination, the claimant exhibited smooth range of motion of all the joints without evidence of crepitans. There was no swelling, erythema, subluxation, or contractures. On her right wrist, she had a positive for Phalen and Tinel's but negative carpal tunnel compression test. . . . She was assessed as having diminished range of motion of her shoulder as well as carpal tunnel syndrom in her right wrist (Exhibit 12F).

*Id*. at 14-15.

It is clear from the ALJ's analysis that he considered and weighed the medical evidence regarding plaintiff's wrist and shoulder impairments. Indeed, the ALJ's assessment of plaintiff's RFC specifically included frequent manipulative limitations caused by plaintiff's carpal tunnel. Because the ALJ considered plaintiff's hands and shoulder impairments at the third and fourth step of the sequential evaluation process, any failure in finding these impairments severe at the second step was harmless.

### B. The ALJ Provided Legally Sufficient Reasons for Rejecting Plaintiff's Treating Physician's Opinion

Plaintiff further argues that the ALJ erred in rejecting the opinion of treating physician Dr. McDaniel, while giving significant weight to the opinions of examining physician Dr. Mitchell and non-examining physician Dr. Zheutlin.[3] The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen*, 80 F.3d at 1295. To evaluate whether an ALJ

---

[3] In arguing that the ALJ failed to credit the opinions of treating medical physicians, plaintiff cites to numerous records from medical specialist, including Drs. Page, Nichols, Henderson, and Moore. While plaintiff does discuss the assessments made by these physicians, plaintiff does not explain how their assessments are inconsistent with the ALJ's findings nor does plaintiff identify any opinions these physicians provided pertaining to plaintiff's ability to work. The only treating physician opinion identified by plaintiff is that of Dr. McDaniel.

properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. McDaniel had been treating plaintiff for neck, back, and wrist pain since early 2004. AR 256. Dr. McDaniel's progress notes from September 10, 2008 state that plaintiff had fibromyalgia. Dr. McDaniel further observed that plaintiff had no acute distress, had mild limitations of the right hip joint, and was able to ambulate in spite of complaints of anterior hip pain. *Id*. at 512. He also described plaintiff as "generally looking good and better than the way she feels." *Id*. Dr. McDaniel examined plaintiff again on December 09, 2008, and observed that plaintiff had no acute distress and moved well. *Id*. at 514. However, Dr. McDaniel opined that plaintiff was unable to work at that time. *Id*.

In addition to Dr. McDaniel's opinion, the record also contains the opinion of Dr. Mitchell, an examining physician. On June 2, 2007, Dr. Mitchell conducted a complete orthopedic evaluation. *Id*. at 311-316. He observed that plaintiff exhibited a smooth range of motion of all joints without evidence of crepitans. *Id*. at 314. Plaintiff had diminished range of motion in her lumbar spine and shoulder, and there were findings of carpel tunnel in plaintiff's

9

right wrist. *Id*. at 315. Based on the examination, Dr. Mitchell opined that plaintiff could stand/walk for 6 hours, sit for 6 hours, lift/carry 20 pounds occasionally and 10 pounds frequently. *Id*. at 316. Dr. Mitchell further opined that plaintiff may have frequent postural limitations, including bending, stooping, crouching, and climbing, and that there may be frequent manipulative limitations caused by carpal tunnel syndrom in plaintiff's right wrist. *Id*.

The record also contains the opinions of Drs. Zheutlin and Eskander, both non-examining physicians. Dr. Zheutlin opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; was unlimited in pushing and pulling; and could occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id*. at 471-72. Dr. Eskander opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8-hour day, sit 6 hours in an 8-hour day, was unlimited in pushing and pulling, and occasionally limited in climbing, stooping, kneeling, crouching, and crawling. *Id*. at 320-321. Dr. Eskander further opined that plaintiff had manipulative limitations, including reaching and fingering. *Id*. at 321.

The ALJ rejected Dr. McDaniel's opinion because it was not a proper medical opinion as defined by the regulations. *Id*. at 16. "'Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'" *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)); *see also* 20 CFR § 404.1527(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Thus, an ALJ is not obligated to provided detailed reasons for rejecting a medical experts opinion regarding the ultimate question of disability. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). Dr. McDaniel's medical opinion consisted of his statement that plaintiff was unable to work. This opinion goes to the ultimate issue of disability, a determination specifically reserved for the ALJ. Accordingly, the ALJ properly rejected Dr. McDaniel's

1  opinion.[4]

2        C.      <u>The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Testimony</u>

The ALJ found that plaintiff's statements concerning the intensity and limiting effect of her symptoms were not credible to the extent that they were inconsistent with the RFC assessment. AR 17. In general, the ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See*, *e.g., Saelee*, 94 F.3d at 522. If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284; *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly

---

[4] Defendant also argues that the ALJ properly rejected Dr. McDaniel's opinion because it contradicted Dr. McDaniel's own medical notes and records and was based on plaintiff's subjective complaints. As the ALJ properly rejected Dr. McDaniel's opinion because it regarded the ultimate issue of disability, the court does not address these arguments.

debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172,177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ provided clear and convincing reasons for rejecting plaintiff's testimony. First, the ALJ found that plaintiff was not credible because there were inconsistencies in her statements regarding her past employment. Specifically, the ALJ found that plaintiff failed to detail her employment with her husband's business. Plaintiff's stated on her disability report that she last worked in January 2005 as an office manager in real estate and sales, *id*. at 95, but she testified at the hearing that she worked in property management during 2006 and 2007. *Id*. at 26-27.[5]

The ALJ also observed that plaintiff's complaints were not consistent with her daily activities. The ALJ stated that plaintiff's reports of disability were inconsistent with evidence that she was an avid golfer. *Id*. 18. Accordingly to plaintiff's application, she was unable to work due to her disabling condition on January 12, 2007. However, a progress note completed by Dr. Nichols on February 1, 2007, states that plaintiff "is an avid golfer and very active." *Id*. at 217. Clearly plaintiff's contention that she was experiencing debilitating pain on January 12, 2007 is inconsistent with playing golf and living an active lifestyle.

---

[5] In the section of the disability report that asks the claimant to list all jobs he or she had in the last 15 years, plaintiff did not include the work she performed for her husband. In a separate section of the report, plaintiff disclosed that her husband has his own business and that she works for the business as needed. *Id*. at 107. Plaintiff, however, did not specify the dates she worked this position.

1    Lastly, the ALJ stated that he was not crediting plaintiff's testimony because she testified
2 that she had debilitating pain, but also stated that she stopped taking her prescribed medication.
3 *Id*. at 18.  An ALJ may properly discredit a claimant's testimony where the claimant does not
4 follow a prescribed course of treatment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).
5 Plaintiff testified that Dr. Peters prescribed her Lyrica for her fibromyalgia, but that she decided
6 to stop taking the medication because it caused her headaches.  AR 41.  The ALJ, however,
7 noted that there was no medical evidence supporting her contention that the side effects of her
8 medication were as server as she claimed.  *Id*. at 18; *See Fair*, 885 F.2d at 603 (". . . a finding by
9 the ALJ that the proffered reason [for discontinuing a prescribed course of treatment] is not
10 believed, can cast doubt on the sincerity of the claimant's pain testimony.").  Thus, the ALJ
11 properly discredited plaintiff's testimony for failing to pursue a course of treatment.

12    The ALJ provided clear and convincing reasons for finding that plaintiff had exaggerated
13 the pain she experienced.  Accordingly, the ALJ did not error in rejecting plaintiff's testimony.

14    D.    The ALJ's Determination that Plaintiff Could Perform Light Work is Supported by Substantial Evidence

16    Plaintiff argues that the ALJ's finding that plaintiff could perform light work was not
17 supported by substantial evidence in the record.  Dckt. No. 12-1 at 28.  Specifically, plaintiff
18 argues that the ALJ erred by failing to consider medical evidence that plaintiff's impairments
19 limited her in reaching and fingering.  *Id*. 29-30.

20    Plaintiff first contends that the ALJ erred by not incorporating fingering limitations in the
21 RFC assessment.  *Id*. at 30.  It appears that plaintiff misunderstands the ALJ's RFC assessment.
22 Although the ALJ did not specifically state that plaintiff had limitations with "fingering", the
23 RFC does specify that plaintiff "might also have frequent manipulative limitations because of the
24 carpal tunnel syndrom in her right wrist."  *Id*. at 14.  This clearly includes fingering limitations
25 caused by plaintiff's carpal tunnel.  *See* S.S.R. 85-15 (categorizing fingering as a manipulative
26 impairment that may limit a claimants ability to perform certain jobs.)

13

Plaintiff further argues that the ALJ's RFC assessment was not support by substantial evidence because the RFC did not include limitations in reaching, which was assessed by Dr. Eskander. Though there is evidence indicating that plaintiff had a shoulder impairment, the record also contains evidence that plaintiff was not limited in reaching. Plaintiff was evaluated by Dr. Mitchell, who observed that plaintiff had smooth range of motion in all joints without crepitans. *Id*. at 314. Although he did find that plaintiff had a reduced range of motion in her shoulder, he did not conclude that plaintiff had reaching limitations. *Id*. at 315-316. Rather, Dr. Mitchell only found that plaintiff had manipulative limitations caused by carpel tunnel. *Id*. The ALJ was permitted to resolve the conflict between Dr. Eskander and Dr. Mitchell's assessments and give greater weight to the opinion of Dr. Mitchell, an examining physician. *See Edlund*, 253 F.3d at 1156 (an ALJ is responsible for resolving conflicts in medical testimony); *Lester*, 81 F.3d at 830 (the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician). Because the ALJ's decision is supported by the opinion of Dr. Mitchell, the ALJ did not error in failing to include reaching limitations in the RFC. Accordingly, the ALJ did not error in assessing plaintiff's RFC.

E.      The ALJ did not Err in Applying the Medical-Vocational Guidelines

Lastly, plaintiff argues that the ALJ erred in applying the Medical-Vocational Guidelines. This argument is primarily based on plaintiff's contention that the ALJ failed to account for fingering and reaching limitations in establishing plaintiff's RFC.[6] As explained above, the ALJ

---

[6] Intertwined with plaintiff's argument that the ALJ erred in applying the Medical-Vocational Guidelines, is plaintiff's convoluted argument that the ALJ erred in failing to question plaintiff as to why she could not perform past relevant work. Dckt. No. 12-1 at 31. Plaintiff appears to argue that the ALJ was required to ask plaintiff at her administrative hearing why she could not perform her past relevant work because she was not represented by counsel at the hearing. *Id*. It is difficult to understand how this argument effects plaintiff's position that the ALJ erred in finding that she was not disabled. Even more curious is plaintiff argument "that substantial evidence should be found to support the ALJ's finding that she does not have the residual functional capacity to perform past relevant work." *Id*. Assuming that the plaintiff is correct in her assertion that the ALJ was required to further inquire into why plaintiff could not perform her past relevant work, the court finds no prejudicial error as the ALJ concluded that

14

did not err in assessing plaintiff's manipulative limitations and therefore did not error in apply the Medical-Vocational Guidelines.

IV. <u>CONCLUSION</u>

The ALJ's decision is supported by substantial evidence in the record and based on the proper legal standards. Therefore, it is hereby ORDERED that

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in defendant's favor.

DATED: March 28, 2012.

*[signature]*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

plaintiff lacked the RFC to perform her past relevant work. AR 18.